UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMIE-LEE A. HASTED, *Individually and as Administratrix of the Estate of Hank B. Lee, Deceased,* <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Action No. 19-cv-12049-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Jamie-Lee Hasted ("Plaintiff") brings this case against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act, alleging that Defendant's negligence led to the sudden death of her husband, Hank B. Lee ("Mr. Lee"), while he was a patient at Defendant's Brockton VA Medical Center ("Brockton"). [ECF No. 1 ("Compl.")]. Plaintiff designated Dr. Steven E. Bruce ("Dr. Bruce") as her expert witness with respect to the allegedly negligent care provided to Mr. Lee. Defendant now moves to preclude Dr. Bruce's testimony pursuant to Fed. R. Evid. 702. [ECF No. 48].

**I.   BACKGROUND**

Mr. Lee was a 34-year-old Marine Corps veteran who, Plaintiff contends, was transferred to Brockton because he was experiencing suicidal ideation, post-traumatic stress disorder ("PTSD"), traumatic brain injury, and a possible dissociative fugue. [ECF No. 39 at 2 ¶ 2]. Mr. Lee remained at Brockton from February 7, 2017 until March 4, 2017, only leaving the facility when he was sent to Good Samaritan Medical Center from February 10 to February 13, 2017 due

to chest pain. [ECF No. 39 at 2 ¶ 3]. Upon discharge from the Good Samaritan Medical Center, Mr. Lee was returned to Brockton's locked, inpatient psychiatric unit ("the Unit") and kept under "close observation." [Id. at 2 ¶¶ 4–5]. At Brockton, "close observation" means that the patient is observed by staff every 15 minutes, 24 hours a day. [Id. at 2 ¶ 6]. On March 4, 2017, Mr. Lee was found unresponsive in the Unit and his death certificate lists his cause of death as acute fentanyl intoxication. [Compl. ¶¶ 42, 48, 51].

Plaintiff alleges that Defendant caused Mr. Lee's death by negligently failing to provide him with the level of care consistent with the governing standard for a locked, inpatient psychiatric facility, including by allowing contraband to enter the facility and failing to perform 15-minute checks of Mr. Lee. [Compl. ¶¶ 60–63; ECF No. 28 at 4–7].

Dr. Bruce, Plaintiff's proffered expert, is a "licensed clinical psychologist in the state of Missouri" and received his M.S. and Ph.D. in clinical psychology from Virginia Commonwealth University. [ECF No. 48-1 at 1]. He has published and presented extensively on trauma and PTSD and is currently an associate professor of clinical psychology and director of the Center for Trauma Recovery, a multi-disciplinary center focused on trauma recovery. [Id.]. In addition, Dr. Bruce is the director of clinical training at the University of Missouri, St. Louis. [Id.]. Plaintiff seeks to introduce Dr. Bruce's opinions, including that

> providers at the Brockton VAMC breached the standard of care by failing to prevent Mr. Lee's overdose by fentanyl in a locked ward, by failing to follow their own prescribed checks at 15 minute intervals, by failing to timely treat Mr. Lee for a fentanyl overdose, and by failing to prevent Mr. Lee's acquisition of fentanyl by failing to properly search ward entrants for contraband or failing to secure any prescription fentanyl in the ward.

[ECF No. 48-1 at 2].

II.     DISCUSSION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides that a person

> who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court is tasked with performing a gatekeeping role in which it must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The court must also consider whether the expert is "qualified in the specific subject for which his [or her] testimony is offered." Garfield v. Gorilla, Inc., No. 13-cv-12810, 2015 WL 3874826, at *2 (D. Mass. June 23, 2015) (quoting Whiting v. Bos. Edison Co., 891 F. Supp. 12, 24 (D. Mass. 1995)). The court's analysis, however, is "not limited to an appraisal of an expert's credentials and techniques but also entails an examination of his [or her] conclusions to determine whether they flow rationally from the methodology employed." Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012). In other words, if the analysis reveals "too great an analytical gap between the data and the opinion proffered," the expert's testimony should be excluded. Id. (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Defendant first attacks the admissibility of Dr. Bruce's opinions based on his purported lack of qualifications, and the Court, in its gatekeeping function, must determine whether his qualifications are sufficient to permit him to testify before proceeding to the remaining factors.

3

See Levin v. Dalva Brothers, Inc., 459 F.3d 68, 78 (1st Cir. 2006). The First Circuit has held that to be allowed to testify, an "expert 'should have achieved a meaningful threshold of expertise' in the given area[,]" id. (quoting Prado Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36, 40 (1st Cir. 2005)), although the fact "[t]hat 'a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields[,]" id. (quoting Nimely v. City of New York, 414 F.3d 381, 399 n.13 (2d Cir. 2005)).

Dr. Bruce seeks to opine on issues related to the standard of care owed to patients in a locked, inpatient psychiatric unit and, seemingly, to the operational protocols of such facilities. See [ECF No. 48-1 at 2–3]; see also [ECF No. 51 at 3]. Dr. Bruce, however, is not a psychiatrist, or even a medical doctor, and nowhere in his expert report does he explain how his non-medical Ph.D. in clinical psychology or his training as a clinical psychologist enables him to opine on issues related to the field of psychiatry or the operational protocols or duty of care owed in a locked, inpatient psychiatric facility. Accord Capellupo v. Nassau Health Care Corp., No. 06-cv-04922, 2009 WL 1705749, at *11 (E.D.N.Y. June 16, 2009) ("Indeed, the Court finds that, as a psychologist, Mr. Anderson would not be competent to testify regarding generally accepted standards of *medical* care . . . .) (citing Finnegan v. Univ. of Rochester Med. Ctr., 34 F. App'x 26, 27 (2d Cir. 2002)). While Dr. Bruce undoubtedly has extensive experience treating and studying affective disorders, including PTSD, which Mr. Lee appears to have been experiencing prior to his death, the treatment of such psychological disorders is not at issue. Dr. Bruce's

4

expertise in those subjects therefore cannot justify admitting his testimony regarding a wholly different subject.

The Court is also not persuaded by Plaintiff's attempt to rehabilitate Dr. Bruce's qualifications as an expert witness. That Dr. Bruce participated in "supervised rotations" in an inpatient psychiatric ward during an internship for his Ph.D. in clinical psychology in or around 1998 does not qualify him to testify, approximately 24 years later, as an expert witness regarding the operational protocols or standard of care owed to patients in such a ward. Plaintiff did not cite, nor is the Court aware, of any case law holding that an internship completed more than two decades in the past is sufficient to qualify someone as an expert witness in that field. Plaintiff's argument that Dr. Bruce is qualified as an expert because he "has extensive experience referring his patients to inpatient psychiatric wards" is no more persuasive. [ECF No. 51 at 3].

In sum, the Court finds that Dr. Bruce lacks the necessary qualifications to testify as an expert witness regarding the operational protocols and standard of care owed to patients in a locked, inpatient psychiatric ward. While that alone is sufficient reason to exclude his testimony, the Court further notes that exclusion is also proper because Dr. Bruce, in his report, does not articulate any methodology used to reach his conclusions. "It is fundamental that expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion." Schubert v. Nissan Motor Corp in U.S.A., 148 F.3d 25, 31 (1st Cir. 1998) (quoting Damon v. Sun Co., Inc., 87 F.3d 1467, 1474 (1st Cir. 1996)). Despite this requirement, Dr. Bruce's report cites no medical literature or even personal experience that would permit him to draw conclusions regarding whether Defendant failed to meet the standard of care and the report is therefore "inherently unreliable." Clemente-Vizcarrondo v. United States, No. 17-cv-1144, 2020 WL 748840, at *5 (D.P.R. Feb. 14, 2020) ("When a proffered expert physician's report

lacks any medical literature, data, or even a more basic explanation of how their conclusion was reached, as is the case here, said report is inherently unreliable.").

## III. CONCLUSION

Because the Court finds that Dr. Bruce lacks the qualifications necessary to testify as an expert witness on the proffered topics and further fails to articulate any methodology used to reach his conclusions, Defendant's motion to exclude his testimony, [ECF No. 48], is GRANTED.

**SO ORDERED.**

December 2, 2022

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE